## IN RE BURTON T. PAGE.

### FILED MAY 23, 1911. No. 16,955.

1. **Stipulations.** An agreed statement and stipulation of the facts upon which a cause is to be decided should contain nothing but the material facts in issue. More than this is surplusage and redundant.

2. ————: EXHIBITS. Where a cause in an original action is submitted upon an agreed stipulation of facts in writing, and the stipulation refers to and embodies certain exhibits by specific reference, and they are presented to the court, explained and their use demonstrated during the argument, they become, and must be treated as a part of the evidence in the case and considered as fully as though the elucidation were embodied in the stipulation.

3. **Commerce:** INTERSTATE AND INTRASTATE. When goods, inclosed in a receptacle or package, are shipped from a point in one state to a point in another, they become and are a part of the interstate commerce of the country and retain that distinctive character until sold or the original package in which they were consigned is broken after they arrive at the point of destination. If the original package is broken by the consignee for the purpose of the sale of the smaller units or packages contained in the original inclosure, the interstate quality of the whole is lost, and the consignment becomes a part of the body of the property of the state and is subject to its laws.

4. **Habeas Corpus:** BURDEN OF PROOF. In an original application for a writ of habeas corpus whereby the plaintiff seeks his discharge from the custody of an officer holding a warrant or commitment regular on its face, it devolves upon the plaintiff to show that his detention is unlawful. Failing to do so, the application will be dismissed and the plaintiff remanded to the custody of the officer holding the authority for his detention.

ORIGINAL application for writ of habeas corpus. *Writ denied.*

*John Lee Webster* and *Earl D. Babst,* for petitioner.

*Grant G. Martin, Attorney General, George W. Ayres* and *F. M. Tyrrell, contra.*

REESE, C. J.

This is a companion case with *In re Agnew,* p. 306, *post,* and *In re King, ante,* p. 298, all having been submitted upon the same "agreed stipulation of facts," argued at the same time, and submitted on the same briefs.

Before entering upon a discussion of the case, we wish to enter our most emphatic disapproval of the manner of submission upon the so-called "agreed stipulation of facts," and to say that, had we known before argument of what we would have to encounter in the persual of the "stipulation of facts," we certainly should have refused to allow the cases to be submitted thereon, and have insisted that a reasonable stipulation should be filed. The agreed stipulation consists of 28 pages of printed matter of brief size, consisting of an historical sketch of the growth and development of the cracker trade, the receptacles in which the crackers were shipped, the handling of the crackers with the hands of the seller, weighing them in scales in which they were placed by the use of a scoop, then delivered or sent to the customers at their homes with other articles purchased, "such as soap, fish, cheese, kerosene, fruits, vegetables," etc., and by which they, "from their porous and crisp nature were subject to the baleful effects of the air, moisture, and dust, and deteriorated rapidly in substance and flavor, and were liable to, and frequently did, absorb to a greater or less degree a taste or flavor of the other articles with which they were so placed or commingled," etc. Then follows a history of the development of the package system of the National Biscuit Company, beginning with a history of the patented wrapper or paper box, made by machinery, and the placing therein of the biscuit "untouched by human hands and uncontaminated by the worst surroundings of its journey from the factory to the table of the consumer," the wonderful sale of " 'Uneeda Biscuit' at the uniform price of 5 cents per package," the "hundreds of millions of packages of 'Uneeda Biscuit' having been so manufactured and advertised and sold through-

out the United States without, in a single instance, any statement being printed on the label of the net weight or measure of the contents exclusive of the container, but always, and in every instance, advertised and sold with the printed statement on the label, 'Five Cents a Package.' " We are next regaled with a lucid and soul-stirring history of the construction of the two factories, one in the city of New York, and the other in Chicago, "at a cost  *   *   * of several millions of dollars," and "arranged with special reference to the use of a series of machines and mechanical appliances invented for it, and so connected and placed that, in the process of manufacture, the crackers are carried by descending pans from the ovens on the top floor of the buildings to moving tables on a lower floor, where at the end of said tables are machines which by one stroke so assist in the simultaneous folding of a carton blank and a sheet of paraffin paper that the two become a unitary box structure, calculated to exclude air, moisture, dust, dirt, and vermin," until they "come along on the moving tables and their conveyors, and an employee takes whole, selected biscuit and puts them into the open package, just as quickly, easily and accurately as a chord is struck by a musician on an organ or piano, and the biscuit are then touched by human hands for the first and only time until opened in the home of the consumer." The method of filling the packages, the care to avoid breakages, "neither be too crowded nor too loose," are elaborately explained, as well as the automatic closing machines, the application of the "red Iner-seal Trade Mark" on each end, the formation of the "bundle," the placing of the bundle label "showing the legend 'Uneeda Biscuit, National Biscuit Company,' " then "trucked to cars for shipment," etc., the great value of plates and dies for printing labels and wrappers, the use of the best and highest grades of flour, the resultant "light, crisp and flaky" cracker, "which are prime elements of superiority and value."

After the patient perusal of the foregoing, but little of which is above referred to, there are about three pages of

cuts and prints of the 54 different kinds of packages, and, following this, three maps of the United States showing the location and boundary of each state and territory in the Union, excepting Alaska, Hawaii, Guam, Porto Rico, and the Philippine Islands. Why they are omitted is not explained. The margin of these maps are fairly well filled with legends showing the route of travel from the factory of supposedly all the different brands of crackers from the "Zu Zu Ginger Snaps" to "Barnum's Animals." Among other statements following the foregoing may be noted a reference to the extensive advertising of the "biscuit" and the aggregate of sales for the years 1889 to 1910, and a copious extract from the decision of a federal court upon the subject of the validity of the patent of a carton or wrapper in a cause where the question of an infringement was presented. The importance of that decision upon the questions here presented is not perceived. There is also a synopsis of the pure food laws of the United States and of all the states, which is scarcely deemed of sufficient importance to warrant their inclusion in a stipulation of facts in this case. The foregoing is but a brief epitome of the unimportant and unnecessary portions of the "stipulation." When we reflect the only purpose of this application is to ascertain if the provisions of the law of this state, requiring the net weight of the contents of a package to be upon it, shall be observed, the extended "stipulation" would hardly seem necessary. We are wholly unable to conceive why the records of this court should be loaded down with this great mass of what seems to us to be immaterial matter, to say nothing of consuming the time of the already overworked judges in reading it. An agreed statement of the facts upon which a cause is to be decided should contain nothing but the material facts in issue. More than this is surplusage and worse than redundant.

The material facts in this case differ from those in the two companion cases in that Page is not, strictly speaking, a retail dealer, but is said to be an agent of the foreign

manfacturer, and is conducting a "distributing house" in the city of Lincoln on behalf of the manufacturer, and is selling the manufactured articles to merchants, and possibly to others, within this state.   The material and essential inquiry is as to whether he sells the imported product in the original and unbroken package in which it is shipped from the factories at New York and Chicago to him, or whether he breaks the package and sells the smaller and included packages separately?   The decisions, some of which are cited in *In re Agnew,* hold that the right to import from another state or nation carries with it the right to sell; but, in order that the property retain its distinctive characteristic of interstate commerce in a sale, it must be sold in the unbroken, identical package as when shipped by the consignor.   If the container or package consists of smaller units or packages, and the original or outside package is broken and the smaller units or packages are sold, the protection of the law of interstate commerce is gone, and the property at once becomes a part of the body of the property of the state and is subject to its laws. This is too well settled to be open to dispute.   The controlling question therefore is:   Were Page's sales made in the original, unbroken packages, as when consigned to him, or were said packages, or containers, broken and the smaller packages sold therefrom?   The "agreed stipulation of facts" is not quite clear as to his procedure.   Instead of a segregation of the parts of the so-called stipulation of facts so as to refer to and dispose of the facts of each case separately, they are so commingled as to render it necessary to refer to those of the other cases in order to ascertain the true facts.   Paragraph 10 of the stipulation contains a general statement of the method of handling the packages by Page.   It is as follows:

"That after these packages of Uneeda Biscuit are wrapped into bundles, each containing one dozen packages, they are shipped without change of condition direct to National Biscuit Company, Lincoln, Nebraska, in charge of Burton T. Page, sales agent and employee of said National

Biscuit Company, and placed without change of condition into a sales agency or warehouse of the National Biscuit Company, located and operated at Lincoln, Nebraska, and are offered for sale by said Burton T. Page to the retail grocers of Lincoln. In answer to orders given by the retail grocers, Burton T. Page delivers said bundles in the same unbroken and unopened condition as when the same are shipped from the city of New York, in the state of New York, or from the city of Chicago, in the state of Illinois, and received by him, the said Burton T. Page, at Lincoln, Nebraska, as sales agent and employee of said National Biscuit Company, and in no other way."

It may be noted that each package sold contains one dozen smaller packages. The latter are the packages which are sold by the retailers at 5 cents each. Also that Page delivers "said bundles" to the retailer without breaking them. In paragraph 12, which refers to sales by King, it is stipulated that "King purchases, through the said Burton T. Page, Uneeda Biscuit from the National Biscuit Company by the dozen packages, and the said Ornan J. King receives bundles, each containing one dozen packages of Uneeda Biscuit in the same unchanged and unbroken condition as when said bundles left said National Biscuit Company at its factories in the city of New York, in the state of New York, and in the city of Chicago, in the state of Illinois, and said Ornan J. King places said bundles on the shelves and counters of his grocery store as an article of merchandise, so that the said bundle, from the time it was formed in New York or Chicago, trucked to a railroad car, placed in such railroad car, transported in car-load and part car-load lots, placed in the warehouse or sales agency of said National Biscuit Company at Lincoln, in the state of Nebraska, trucked in wagons to the store of the said Ornan J. King, and displayed by the said Ornan J. King on his shelves and counters in said store, has not been changed in any respect whatsoever, or inclosed in or united to, or formed as a part of, any other article of merchandise, bundle or box, or parcel of any kind or descrip-

tion, but is in said Ornan J. King's store in the same condition as when formed in bundles in said factories of said National Biscuit Company and shipped by it as an article of commerce to Lincoln, in the state of Nebraska, and as received by said Ornan J. King in his said retail grocery store at Lincoln, in the state of Nebraska." This paragraph is misleading, wherein it is sought to show that the bundles purchased by King are the original packages shipped from the factories in New York and Chicago, which clearly they are not. But it is shown that the purchases are by the dozen packages, which are the 5-cent packages. In paragraph 16 it is stated that the packages "have printed thereon the price of each, and are sold by the National Biscuit Company to the dealer by the dozen," and resold singly by the dealer. These "dozens" are contained in a square bundle containing one dozen of the 5-cent packages, and, as most clearly appears, they are the bundles which are sold to the retailer by Page. An illustration of this bundle is shown and verifies the above beyond question. But these bundles of dozens are not the original packages shipped from the factories. There are two cuts or illustrations of these original packages, which are presented in the agreed statement, and they each contain more than one of the "dozen" packages.

At the argument of the cases before the bar of this court, certain exhibits, presumably those referred to in the twenty-fifth paragraph of the stipulation, showing the manner in which the goods were packed and shipped, were presented, and explanations of how they were sold by Page were given, which, of course, constituted a part of the evidence upon which this decision must be made. As then elucidated, and taken in connection with the stipulation of facts, it appears beyond question that Page receives the consignment of goods in paper-board cases containing two or more bundles or receptacles, each containing one dozen small 5-cent packages, on neither of which is there any brand showing their

23

contents by weight or measure. These bundles, containing one dozen other packages yet smaller in size, are removed and sold to the retailer, who in turn sells the 5-cent packages to the consumer. From this it appears that the goods are not sold to the retailer in the original package, as shipped from the factory, and therefore the sales are not protected by the interstate commerce law. Our attention is directed to a portion of paragraph 26 of the stipulation which refers to a specific sale made by Page to a person therein named, and which is within itself contradictory. It is said that Page sold to the person named "one large package, described in paragraph 15 of this stipulation as a bundle, containing 12 small packages" of Uneeda Biscuit, etc. We have been advised of but one style of package containing "12 small packages," and that one contains 12 of the 5-cent packages. When we turn to paragraph 15 and observe the package there illustrated, we find a receptacle containing more than 24 of the "small packages" and which is certainly not the bundle containing "12 small packages," so frequently referred to in the stipulation, arguments and briefs.

It is fundamental that in a proceeding of this kind it devolves upon plaintiff (Page) to show that his detention is unlawful. This he has failed to do. His petition is dismissed, and he is remanded to the custody of the sheriff of Lancaster county.

WRIT DENIED.

FAWCETT and ROSE, JJ., not sitting.